UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X
ELLIS LEE,

                Plaintiff,

    -against-　　　　　　　　　　　　　　　　**REPORT AND**
　　　　　　　　　　　　　　　　　　　　　　　　　**RECOMMENDATION**
SAMITI TECHNOLOGY INC. and　　　　　　　21-CV-1032 (CBA) (TAM)
PARMI CHEEMA,

                Defendants.
------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Ellis Lee ("Plaintiff") initiated this action against Defendants Samiti Technology Inc. and Parmi Cheema ("Defendants") on February 25, 2021. (*See* Complaint ("Compl."), ECF No. 1.) Plaintiff seeks damages for unpaid wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, Art. 6 § 190 *et seq.* and Art. 19 § 650 *et seq.* ("NYLL").

Plaintiff has reached a proposed settlement of her wage and hour claims with Defendants, the terms of which are set forth in a settlement agreement filed with the Court. (*See* Aug. 6, 2021 Proposed Settlement Agreement ("Settl. Agr."), referred to herein as the "FLSA agreement" or "settlement agreement," ECF No. 12-1.) On August 6, 2021, the parties filed a joint letter motion requesting that the Court approve the settlement agreement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). (*See* Pl.'s Letter, ECF No. 12.) The Honorable Carol Bagley Amon referred the parties' motion to the undersigned Magistrate Judge for a fairness hearing and a report and recommendation. (*See* Aug. 6, 2021 ECF Minute Entry.)

On August 19, 2021, the Court held a fairness hearing on Plaintiff's motion. (*See* Aug. 19, 2021 ECF Minute Entry; Transcript of Aug. 19, 2021 Proceedings ("Tr."), referred to herein as the "Fairness Hearing," ECF No. 16.) For the reasons set forth below, the Court finds the settlement agreement to be fair and reasonable, and recommends that the parties' settlement agreement be approved.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As set forth in the Complaint, Plaintiff alleges that she worked from home as an account manager for Defendants' recruiting agency from February 12, 2020, until August 26, 2020. (Compl., ECF No. 1, ¶¶ 1, 21, 23; *see also* Tr., ECF No. 16, at 3:6–9 ("[M]y client worked for [D]efendants, which is essentially a technology recruitment company . . . . as an account manager for about six months[.]").) Plaintiff describes her duties and responsibilities as "relating to recruiting candidates for the state business as well as assisting and training other recruiters." (Compl., ECF No. 1, ¶ 24.) Plaintiff further alleges that Defendants compensated her with an annual salary of $57,000 ($1,096.15 per week) and that she worked five days a week from 8:30 a.m. until 6:00 p.m., or approximately fifty-five to sixty weekly hours. (*Id.* ¶¶ 26, 30, 31.) Plaintiff claims that she recorded her own hours and submitted them via e-mail, but that she often worked past the time she "clocked out" because "it did not make a difference in her pay." (*Id.* ¶¶ 29–30.) In addition, Plaintiff contends that although she was earning below the minimum threshold for salaried workers to be deemed exempt, she was not paid for overtime and did not receive any commission, nor did she receive the payment for health insurance promised to her. (*Id.* ¶¶ 28, 32, 44.) Finally, Plaintiff alleges that shortly after she "inquired or complained in writing about how she was being paid to her superior," Defendants fired her. (*Id.* ¶¶ 52, 54, 60, 62.)

On April 16, 2021, the parties informed the Court of an existing arbitration agreement and requested a stay of the case to pursue settlement discussions, which the Court granted on May 5, 2021. (*See* Apr. 16, 2021 Letter Mot. to Stay, ECF No. 8; Apr. 16, 2021 Letter Mot. for Pre-Mot. Conference, ECF No. 9; May 6, 2021 ECF Minute Entry.) On August 6, 2021, the parties informed the Court that they reached a settlement of Plaintiff's FLSA and NYLL claims. (*See* Pl.'s Letter, ECF No. 12.)[1] Under the terms of the FLSA settlement agreement, Defendants agree to pay a total of $7,250, of which Plaintiff is to receive $4,833.33 and Plaintiff's counsel is to receive $2,416.67 in attorneys' fees and costs. (Settl. Agr., ECF No. 12-1, § I.A.)

For the reasons set forth below, the Court recommends approving the settlement agreement.

## DISCUSSION

I. Legal Standards

In reviewing proposed settlements under the FLSA, courts are tasked with considering "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Rotthoff v. New York State Cath. Health Plan, Inc.*, No. 19-CV-4027 (AMD) (CLP), 2021 WL 1310220, at *2 (E.D.N.Y. Apr. 8, 2021) (internal quotation marks and citation omitted); *see also Cheeks*, 796 F.3d at 206. Courts in this circuit have identified several factors for determining whether a proposed settlement is fair and reasonable, including:

---

[1] As will be discussed below, in addition to resolving Plaintiff's wage and hour claims under the FLSA and NYLL, the parties have separately agreed to settle "a general release of claims predicated on Defendants' offer of separation pay prior to any claims being raised by Plaintiff." (Pl.'s Letter, ECF No. 12, at 2.)

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations omitted); *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing the *Wolinsky* factors).

As the Second Circuit recently held, if a court finds that a "proposed settlement is unreasonable in whole or in part, the court . . . must reject the agreement or give the parties an opportunity to revise it." *Fisher*, 948 F.3d at 605. The court cannot, however, "simply rewrite the [settlement] agreement." *Id.* Accordingly, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Id.* at 606 (*citing Evans v. Jeff D.*, 475 U.S. 717, 727 (1986)).

II. <u>Settlement Agreement</u>

Analyzing the settlement agreement against the *Wolinsky* factors, the Court finds that the amount and terms of the settlement are fair and reasonable. Considering (1) the settlement amount as compared to Plaintiff's wage deficiency estimate; (2) the terms of the agreement; (3) the relatively short length of Plaintiff's employment; and (4) the possible litigation risks, which could ultimately limit the range of Plaintiff's possible recovery, the Court concludes, on balance, that the settlement agreement "reflects a reasonable compromise of disputed issues." *Rotthoff*, 2021 WL 1310220, at *2.

4

A. Bifurcated Settlement Agreement

As an initial matter, the Court notes that the parties have entered into a bifurcated settlement agreement resolving Plaintiff's wage and hour claims under the FLSA and NYLL as well as claims related to Plaintiff's severance, the latter of which were already under negotiation when Plaintiff raised her wage and hour claims. (*See* Pl.'s Letter, ECF No. 12, at 2–3; Tr., ECF No. 16, at 14:22–15:20.) While the propriety of bifurcated settlement agreements under *Cheeks* remains an open question, *see Torres v. Mc Gowan Builders*, No. 18-CV-6099 (RML), 2020 WL 5369056, at *2 (E.D.N.Y. Sept. 8, 2020) (citing *Fisher*, 948 F.3d at 607 n.12), courts in this district have found that "[s]eparate settlement agreements, one governing the resolution of FLSA claims and another the resolution of non-FLSA claims, are an acceptable method of resolving cases which involve claims other than those related to improper payment of wages." *Seecharan v. Heritage Place LLC*, No. 20-CV-3898 (WFK) (LB), 2021 WL 1299692, at *3 (E.D.N.Y. Mar. 15, 2021) (citing *Ortiz v. Breadroll, LLC*, No. 16-CV-7998 (JLC), 2017 WL 2079787, at *2 (S.D.N.Y. May 15, 2017)), *report and recommendation adopted*, No. 20-CV-3898 (WFK) (LB), 2021 WL 1299436 (E.D.N.Y. Apr. 7, 2021).

When presented with bifurcated settlement agreements, courts determine whether the wage and hour agreement is fair and reasonable, but the non-wage and hour agreement is not subject to approval by the court. *Id.* ("Unlike the agreement governing the FLSA claims, the agreement resolving the plaintiff's discrimination claims is not subject to Court approval and may contain provisions which would be fatal to a FLSA settlement, such as a non-disclosure clause." (citation omitted)); *cf. Bazile v. Asset Prot. Grp. LLC*, No. 18-CV-6820 (DLI) (SJB), 2019 WL 7985168, at *3 (E.D.N.Y. Nov. 27, 2019) (collecting cases). Parties are not permitted, however, to make "an end-run around *Cheeks*" by placing impermissible clauses in the non-FLSA settlement

5

agreement outside of the Court's mandated review. *See Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553–54 (E.D.N.Y. 2018).

Here, the parties have drafted separate agreements, one governing Plaintiff's wage and hour claims, and the other pertaining to the resolution of Defendants' "offer of separation pay prior to any claims being raised by Plaintiff." (*See* Pl.'s Letter, ECF No. 12, at 2 ("[T]he parties have entered into separately negotiated releases explicitly bargained-for during settlement negotiations to provide for 1) a general release of claims predicated on Defendants' offer of separation pay prior to any claims being raised by Plaintiff; and 2) a more limited release of wage and hour claims.").) Following the Court's August 19, 2021 Fairness Hearing, the parties filed the non-wage and hour settlement agreement under seal for the Court's review. (*See* Aug. 19, 2021 ECF Minute Entry; Non-FLSA Settlement Agreement Filed Under Seal, referred to herein as the "non-FLSA settlement agreement" or "non-wage and hour settlement agreement," ECF No. 17.) Having examined the parties' non-FLSA settlement agreement, the Court is satisfied that unlike in *Torres v. Mc Gowan Builders*, the terms are sufficiently restricted to Plaintiff's non-FLSA and non-NYLL claims, and do not appear — in intent or effect — to flout the requirements for the resolution of wage and hour claims under the FLSA. 2020 WL 5369056, at *2–3.

First, although the non-FLSA agreement includes a confidentiality clause, it is not "a sweepingly broad confidentiality provision which, on its face, applies to all claims asserted in the complaint, including FLSA claims that may not be settled confidentially." *Doe v. Solera Cap. LLC*, No. 18-CV-1769 (ER), 2021 WL 568806, at *2 (S.D.N.Y. Jan. 20, 2021) (citation omitted). Rather, it only applies to the contents of the non-FLSA settlement agreement. Second, while the agreement contains a non-disparagement clause, it includes an explicit carve-out allowing Plaintiff to make

6

truthful statements related to her wage and hour case. *See id.* at *3. Finally, the Court notes that the separate agreement includes a general release, but that such a release "is appropriate in the context of a separate resolution of non-wage-and-hour claims." *Santos v. Yellowstone Properties, Inc.*, No. 15-CV-3986 (PAE), 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016). The Court also notes that Plaintiff was represented by the same counsel in finalizing both agreements in parallel, and said counsel indicated at the Fairness Hearing that "in the grand scheme of things, [Plaintiff] was okay with having a general release to get her more rather than less." (Tr., ECF No. 16, at 15:17–19.)

Thus, the Court recommends approving the parties' bifurcated settlement structure.

### B. FLSA Settlement Amount & the *Wolinsky* Factors

#### 1. *Plaintiff's Range of Possible Recovery*

Beginning with Plaintiff's range of possible recovery, the Court is satisfied that the proposed settlement amount will adequately compensate Plaintiff as to her wage deficiency claim. The FLSA agreement proposes a total settlement of $7,250, with $4,833.33 going to Plaintiff. (Settl. Agr., ECF No. 12-1, § I.A.) During the Fairness Hearing, Plaintiff's counsel represented that Plaintiff's optimistic, best-case scenario on all claims could have resulted in a recovery of $33,809.46. (Tr., ECF No. 16, at 5:13–14.) This estimate included "overtime, liquidated damages on the overtime, underpaid wages, liquidated damages on [underpaid wages], unpaid health insurance, [and] liquidated damages on [unpaid health insurance]." (*Id.* at 5:8–10.)[2] Notably, as to

---

[2] Plaintiff claimed $1,800 in unpaid health insurance reimbursements based on a maximum of $300 per month for the six months she worked for Defendants, which Defendants disputed. (Tr., ECF No. 16, at 4:9–15.) In addition, although Plaintiff complained of retaliation, Plaintiff's counsel stated that "in our original demand [we] did not include any monetary value for the retaliation claim[.]" (*Id.* at 14:19–21.)

7

Plaintiff's overtime deficiency, Plaintiff's "best day in court calculations" for "about eight weeks of overtime" was $5,344.30, but Plaintiff's counsel conceded that the underlying number of unpaid overtime hours was "an educated guess" based "solely on [Plaintiff's] memory." (*Id.* at 3:20–21, 5:2, 8:23.) In contrast, Defendants argued during the Fairness Hearing that "looking at [Plaintiff's] logs and the schedule, there's no way overtime would've been even possible in some of these weeks." (*Id.* at 7:23–24.) Accordingly, Defendants "calculated [Plaintiff's total] damages [at] well below 3,000 dollars." (*Id.* at 7:11–12.)

While Plaintiff's net settlement amount represents approximately 14.3 percent of her total alleged damages on all of her claims, a percentage smaller than some settlements approved under *Cheeks*, given Plaintiff's lack of documentary support for the hours worked during her six months of employment and Defendants' disagreement as to the essential facts underlying Plaintiff's damages estimate, the Court recommends finding the settlement amount reasonable given Plaintiff's low estimate as to her total wage deficiency and her possible range of recovery. *Cf. Sicajan Diaz v. Pizza Napolitana, Inc.*, No. 19-CV-4911 (EK) (RML), 2020 WL 8265766, at *2 (E.D.N.Y. Dec. 4, 2020) (approving of a settlement agreement representing 20.8% of the plaintiff's total alleged damages "given the disputed facts and liability, as well as the litigation risks"), *report and recommendation adopted*, No. 19-CV-4911 (EK) (RML), 2021 WL 260093 (E.D.N.Y. Jan. 26, 2021). The Court also notes that Plaintiff's net settlement amount represents more than ninety percent of her estimated overtime deficiency. Furthermore, if the separate settlement agreement outside of the Court's review were to be taken into consideration, Plaintiff's net settlement proportion would of course be higher.

2. *Avoiding Anticipated Burdens and Expenses & Litigation Risks*

The proposed settlement will also avoid additional expenses and costs, as well as litigation risks that Plaintiff would face if the case were to go to trial or be compelled into arbitration. *See Castillo v. Cranes Express Inc.*, No. 18-CV-1271 (PKC) (LB), 2018 WL 7681356, at *2 (E.D.N.Y. Dec. 12, 2018) (approving settlement amount where "[t]he settlement provides plaintiff with certainty regarding what he will recover from defendants and avoids the time and expense of litigation"). At the Fairness Hearing, Plaintiff indicated that "there are lots of disputes on all fronts," including Defendants' claim "that this case should have been subject to arbitration, and . . . brought in New Jersey." (Tr., ECF No. 16, at 6:3–6; *see also* Pl.'s Letter, ECF No. 12, at 2 (noting Defendants' representation that they "did not underpay Plaintiff . . . . that Plaintiff did not work as many hours as she has alleged . . . that she was paid more than she indicated that she was," and "that she is subject to arbitration and New Jersey rather than New York law").) If the case were to proceed, Plaintiff's counsel estimated that "it would be easy to spend another [$]30 to [$]50,000 in fees." (Tr., ECF No. 16, at 17:17–19.) Similarly, defense counsel stated at the Fairness Hearing that Defendants are "paying well in excess of the perceived damage based upon the claims asserted" in order to "avoid the cost of litigation." (*Id.* at 7:13–15.)

Given that there are several significant factual and legal disputes that, depending on how they are resolved, could impact Plaintiff's ability to recover at all, and that the negotiated resolution of the matter provides certainty for Plaintiff, on balance, the settlement amount should be found reasonable. *Sicajan Diaz*, 2020 WL 8265766, at *2 (recommending approval where the settlement "allow[ed] both parties to expedite the

resolution of [the] matter and avoid costly motion practice"), *report and recommendation adopted*, 2021 WL 260093.

### 3. *Arm's-Length Bargaining & Possibility of Fraud or Collusion*

The record amply demonstrates that the settlement agreement was the product of arm's-length bargaining reached only after reviewing Plaintiff's emails, engaging in multiple conferences with the Court, and conducting extensive settlement discussions with experienced counsel. There is no evidence to suggest that the settlement agreement was the product of fraud or collusion. For all of these reasons, the Court respectfully recommends that the settlement amount be found to be fair and reasonable. *See Wolinsky*, 900 F. Supp. 2d at 335.

### C. Settlement Agreement Terms

The terms of the settlement agreement further demonstrate that the proposed settlement is the product of arm's-length bargaining between the parties. The FLSA agreement does not include any problematic provisions that could run afoul of the FLSA's remedial purposes, such as impermissible confidentiality or non-disparagement clauses, nor does the settlement agreement include any clauses that limit the prospect of Plaintiff's future employment with Defendant. *See Rotthoff*, 2021 WL 1310220, at *2; *Burgos v. Ne. Logistics, Inc.*, No. 15-CV-6840 (CBA) (CLP), 2018 WL 2376481, at *7 (E.D.N.Y. Apr. 26, 2018) ("Courts in this Circuit have consistently rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA." (citation omitted)), *report and recommendation adopted*, No. 15-CV-6840 (CBA) (CLP), 2018 WL 2376300 (E.D.N.Y. May 24, 2018).

In addition, although the settlement agreement contains a release as to Plaintiff's claims, the release is narrow and applies only to wage-related claims arising under or

10

related to the FLSA and NYLL up until the execution of the settlement agreement. (Settl. Agr., ECF No. 12-1, § IV.) This style of narrow release is appropriate in this context and should be approved. *See Seecharan*, WL 1299692, at *4, *report and recommendation adopted*, 2021 WL 1299436; *Zavala Artiega v. Griffin Organics, Inc.*, No. 16-CV-6613 (AEK), 2021 WL 1997636, at *5 (S.D.N.Y. May 19, 2021).

III.  <u>Attorneys' Fees and Costs</u>

When attorneys' fees are included as part of a settlement agreement, courts are required to "evaluate the reasonableness of the fees and costs." *Fisher*, 948 F.3d at 600 (citing *Cheeks*, 796 F.3d at 206; 29 U.S.C. § 216(b)); *see also Wolinsky*, 900 F. Supp. 2d at 336 ("[T]he Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." (alterations in original) (internal quotation marks and citation omitted)).

Courts in the Second Circuit generally "calculate a reasonable fee using either the 'lodestar' method or the 'percentage of the fund' method." *Valencia v. Nassau Country Club*, No. 18-CV-2724 (LDH) (JO), 2020 WL 7249440, at *1 (E.D.N.Y. Oct. 19, 2020) (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)), *report and recommendation adopted*, No. 18-CV-2724 (LDH) (VMS), 2020 WL 6867911 (E.D.N.Y. Nov. 23, 2020). "Either way, the court must consider the 'traditional criteria' for fee applications," including: "the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk of the litigation; the quality of representation; the requested fee in relation to the settlement; and public policy considerations." *Id.* (citing, *inter alia*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In addition, "in an individual FLSA action in which the parties settle the fee through negotiation, the 'range of reasonableness' for attorneys' fees is greater than in a collective or class

11

action." *Perez-Ramos v. St. George Holding Corp.*, No. 18-CV-1929 (KAM) (JO), 2020 WL 415818, at *3 (E.D.N.Y. Jan. 27, 2020) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Under the "percentage of the fund" method, many courts find that "a one-third contingency fee is generally considered reasonable in this Circuit." *Castillo*, 2018 WL 7681356, at *4; *see also Sicajan Diaz*, 2020 WL 8265766, at *4, *report and recommendation adopted*, 2021 WL 260093. However, "[e]ven where attorneys' fees are sought pursuant to the percentage of the fund method, counsel must submit evidence providing a factual basis for the award." *Rosario v. EMZ Sols. LLC*, No. 18-CV-3297 (RPK) (CLP), 2020 WL 8413532, at *8 (E.D.N.Y. Aug. 7, 2020) (alteration in original) (internal quotation marks and citation omitted), *report and recommendation adopted*, No. 18-CV-3297 (RPK) (CLP), 2020 WL 7777955 (E.D.N.Y. Dec. 31, 2020). A "lodestar check" is a mechanism for courts in this circuit to "review the reasonableness of an attorney's requested fee." *Id.* (citing *Bhardwhaj v. Alan's Farmland Ltd.*, No. 16-CV-7880 (AJN), 2018 WL 1891313, at *2 (S.D.N.Y. Apr. 5, 2018)).

Here, Plaintiff's counsel requests one-third of the total settlement in fees and costs, or $2,416.67, which is consistent with the arrangement set forth in Plaintiff's retainer agreements and well within the range found to be reasonable by courts in the Second Circuit. (*See* Settl. Agr., ECF No. 12-1, § I.A(2); Sept. 24, 2020 Retainer Agreement, attached as Ex. 1 to Pl.'s Reply in Supp., ECF No. 13-1; Feb. 24, 2021 Retainer Agreement, attached as Ex. 2 to Pl.'s Reply in Supp., ECF No. 13-2); *see also, e.g.*, *Caceres v. Brentwood Farmers Martket, Inc.*, No. 20-CV-3476 (AKT), 2021 WL 3276637, at *2 (E.D.N.Y. May 4, 2021).[3] Counsel indicates that their lodestar in this case,

---

[3] In the parties' letter motion, they note that "between the two releases the attorney fees are $5,200[.]" (Pl.'s Letter, ECF No. 12, at 2.) As the non-wage and hour agreement is not before the Court, the Court's review of the attorneys' fees is limited to the FLSA agreement.

supported by contemporaneous billing records showing 44.7 hours expended by members of the AndersonDodson, P.C. law firm at hourly rates ranging from $45 to $475,[4] amounts to $11,369 in fees and $751.67 in costs. (*See* Invoice, attached as Ex. 3 to Pl.'s Reply in Supp., ECF No. 13-3.)[5] After reviewing the billing records submitted by Plaintiff's counsel, the Court finds that the requested fee amount of $2,416.67 represents .21 times the lodestar amount of $11,369, the total amount of fees accumulated in this case. "Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *Meo v. Lane Bryant, Inc.*, No. 18-CV-6360 (AKT), 2020 WL 4047897, at *2 (E.D.N.Y. July 17, 2020) (citation omitted). The Court notes, however, that even if as many as half of the hours submitted were billed in connection with the claims settled in parallel with the wage and hour claims, *i.e.*, $5,684.50 worth of work, the lodestar multiplier would still be .43, and "within the range of multiplier that courts in this District have allowed." *Id.* at *3 (approving a lodestar multiplier of 1.53).

In light of the reasonableness demonstrated by the lodestar cross-check, and because Plaintiff's counsel is requesting one-third of the settlement amount, a

---

[4] Plaintiff's counsel's invoice shows the following hourly breakdown: 3.2 hours billed by partner Christopher Anderson at a rate of $475 per hour; 14.9 hours billed by partner Penn Dodson at a rate of $450 per hour; 1.2 hours billed by Lauren Pyles at a rate of $45 per hour and 1.3 hours billed at a rate of $95 per hour; and 23.7 hours billed by Jess Velez at a rate of $125 per hour and 0.2 hours billed at a rate of $45 per hour. (*See* Invoice, attached as Ex. 3 to Pl.'s Reply in Supp., ECF No. 13-3, at 10.) The invoice also shows 0.2 hours by Natalie Godoy that appears to not have been billable. (*Id.*)

[5] The billing records submitted do not appear to differentiate between hours spent litigating the wage and hour claims, as opposed to the "separation of pay" claims. (*See generally* Invoice, ECF No. 13-3.) However, when asked about the breakdown of hours during the Fairness Hearing, Plaintiff's counsel responded that "the bulk of our work was . . . negotiating the hours worked and the [Defendants'] defenses," and "our time spent has been on the straight wage claim, which does encompass the overtime and the unpaid wages together." (Tr., ECF No. 16, at 12:6–8, 12:20–22.)

percentage normally found acceptable in this circuit, upon review of the parties' submissions and in consideration of the *Goldberger* factors, the Court recommends finding that the requested fee is reasonable. *See Rotthoff*, 2021 WL 1310220, at *4.

## CONCLUSION

In light of the foregoing, the Court respectfully recommends that Plaintiff's motion for settlement approval be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated: Brooklyn, New York
September 8, 2021

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE